No. 30,626.

E. E. McKay, doing business as The McKay Oil Company, *Appellant*, v. The City of Wichita et al., *Appellees*.

(11 P. 2d 733.)

Opinion filed June 4, 1932.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith* and *C. H. Morris,* all of Wichita, for the appellant.

*Vincent F. Hiebsch* and *K. W. Pringle,* both of Wichita, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: The appeal in this case is from an order of the trial court denying the plaintiff an injunction against the city of Wichita to restrain and enjoin it from enforcing and collecting a certain tax imposed upon the plaintiff by reason of his being engaged in the business of dispensing gasoline and other petroleum products through a service station in the city of Wichita. It involves the question of the validity of ordinance No. 11,062, passed by the city, which the trial court found and concluded to be not a license-tax ordinance but an occupation-tax ordinance and not to be illegal as claimed by the plaintiff.

When this action was instituted the city was collecting a tax from such station owners under a different ordinance, and this new ordinance, No. 11,062, was then passed, repealing the old one. The plaintiff then filed an amended and supplemental petition attacking the legality of the new ordinance. Issues were joined on the one question only of the validity of this ordinance, and certain facts were stipulated as to the amount of tax raised in the city under the old ordinance and estimated under the new and under other assess-

ments and also the amount of expenditures per year for different purposes, and from these facts the trial court made findings.

There is no serious contention that the ordinance is not an occupation-tax ordinance as the trial court found it to be. The apparent reason for the change after the commencement of this action was to have the ordinance more nearly one imposing an occupation tax instead of a license tax, so as to conform to the provisions of section 6 of chapter 287 of the Laws of 1929, the gasoline tax law, which is as follows:

"That the tax herein provided for shall be in lieu of all other taxes or license fees (except occupation taxes) upon the sale or use of said motor-vehicle fuels."

The following is the title of the ordinance in question:

"An ordinance providing for the levying of an occupation tax upon the business or occupation of operating gasoline service or filling stations within the city of Wichita, providing penalties for the violation thereof, and repealing such part or parts of ordinance No. 10-812, directly in conflict herewith, and relating thereto."

The body of the ordinance very regularly and consistently refers to the tax imposed as an occupation tax except in section 4, where it provides that a separate license shall be issued for each separate place of business, and it is suggested that this should be construed as being equivalent to a separate receipt. After a careful examination of the ordinance we have no difficulty in concluding with the trial court that it is an occupation-tax ordinance and not a license-tax ordinance.

The distinction between these two taxes was clearly made in the recent case of *Duff v. Garden City*, 122 Kan. 390, 251 Pac. 1091, as follows:

"A regulation charge is one exacted for a privilege or as a condition precedent to the carrying on of the business and is an exercise of the police power, while an occupation tax is imposed under the power of taxation." (p. 393.)

In that case the charge imposed by ordinance on the business of selling gasoline and oil was interpreted to be a license fee rather than an occupation tax and in conflict with the provisions of chapter 274 of the Laws of 1925, which was the same as to exempting occupation tax alone as section 6 of chapter 287 of the Laws of 1929, above quoted. The same distinction is made between such taxes in section 1091 of 3 McQuillin on Municipal Corporations (2d ed.), a license tax being regulatory in purpose and effect while an occupation tax is for the purpose of raising revenue.

Appellant insists that the trial court was in error in holding the ordinance to be legal because a city of the first class has no authority to pass an occupation-tax ordinance and no power to impose an occupation tax, citing R. S. 13-902 and R. S. 13-910, the former section authorizing it to impose a general tax on the real, personal and mixed property in the city, and the latter authorizing the imposition of a license tax in the following language:

"The governing body may levy and collect a license tax upon and regulate any and all callings, trades, professions and occupations conducted, pursued, carried on or operated within the city limits of such city, including auctioneers, artists, agents . . . and any and all other business, trades, avocations or professions not above mentioned."

Our attention is also directed to the different language used in a corresponding statute with reference to cities of the second and third class, which is as follows:

"That the governing body of any city of the second or third class shall have the power by ordinance to classify and license for purpose of regulation or revenue any and all occupations, businesses or professions pursued, conducted or carried on within its corporate limits which are not prohibited by law. . . ." (R. S. 1931, Supp. 12-1650.)

Appellee calls our attention to this statute before it was amended in 1925, being R. S. 14-415, which begins as follows:

"The city council shall have exclusive authority to levy and collect a license tax on auctioneers, artists, agents . . ."

Neither this old statute nor the 1925 amendment thereof was especially construed in the Duff case, because that decision was based upon the conclusion that the ordinance provided for a license tax which was not permissible under the gasoline tax law, R. S. 1931 Supp. 79-3001 to 79-3012.

A noticeable distinction between the amended act applicable to cities of the second and third class and the act applicable to cities of the first class is with reference to the specific words used to express the purposes of the act. In the latter the governing body may levy and collect "a license tax upon and regulate." In the former the governing body shall have the power to classify and "license for purpose of regulation or revenue." For the smaller cities the tax may be imposed either for regulation or for revenue, while first-class cities may levy and collect a license tax and regulate, plainly excluding the alternative privilege and limiting the purpose to licensing and regulating.

The powers of municipal corporations with reference to taxation are generally construed strictly. (25 R. C. L. 1092.) The delegation of power for one purpose should not be construed to confer power for the other purpose.

"Ordinarily the power to tax for revenue will not be implied from a general grant of authority, as power 'to regulate,' or 'to license and regulate.'" (3 McQuillin on Municipal Corporations, 2d ed., 455.)

"The general rule that the powers of a municipal corporation are to be construed with strictness is peculiarly applicable to the case of taxes on occupations, and the authorities concur in holding that if it is not manifest that there has been a purpose by the legislature to give authority for collecting a revenue by taxes on specific occupations, any exaction for that purpose will be illegal." (1 Cooley on Taxation, 4th ed., 291.)

Appellee cites early Kansas decisions where this distinction was not strictly observed, as in the cases of *In re Chipchase, Petitioner,* 56 Kan. 357, 43 Pac. 264, and *Fretwell v. City of Troy,* 18 Kan. 271, where the words "license tax" were held to have been used in a broad sense by the legislature, and to decisions from other states placing a liberal construction upon the term "license and regulate," but they can hardly be controlling here where our legislature from all appearances deliberately used the different words and term in different enactments, and in the gasoline-tax law of 1929, since the plain and clear distinction as to these terms was pointed out in the Duff case, *supra,* two years before.

The decisions cited by appellee from California deserve special attention because they appear to completely sustain the contention of the appellee that power to license and regulate includes and authorizes the city to tax for purposes of revenue, but the progressive history of the situation in that state fully explains the basis of the recent decisions to that effect. It will be observed that the power and authority of a municipal corporation in that state is conveyed and expressed in the charter issued to it by the legislature instead of a general enactment. The following extract from the able opinion in the case of *In re Nowak,* 184 Cal. 701, gives a full and complete reason for the rulings on this subject in that jurisdiction:

"However persuasive we might find the reasoning of the cases and texts thus called to our attention, had the language in question never received interpretation in this state, we are now bound by previous decisions wherein a grant by the legislature of authority to 'license and regulate' has been held to include authority to impose a license tax for revenue only. . . . The question is, What, as a matter of fact, was the intent of the people and of the legislature

when in amending the city charter in 1913, a time subsequent to the decisions above cited, they again incorporated in the charter the words 'license and regulate' in defining the power of the city over lawful businesses and occupations? Whether correct or incorrect as to reasoning, the decisions of this court had given to the words 'license and regulate,' as used in this connection, a precise and technical meaning. When, therefore, at a subsequent time, the people and the legislature undertook to use these exact words in this particular connection, the presumption is almost irresistible that they used them in the precise and technical sense which had been placed upon them by this court." (p. 705.)

Appellee further urges the inclusion of an occupation tax within the taxing power of cities of the first class having a population of over 75,000, as Wichita has, by reason of the reference in R. S. 13-2704 directing that the funds derived from certain sources, including "all occupation licenses," be credited to the general fund of the city, inasmuch as the general fund under the arrangement as prescribed by R. S. 13-2701 does not include the expenses of the police department. But this inferential situation can hardly be said to supply the need of a direct authorization.

We conclude that cities of the first class do not have power and authority to pass an occupation-tax ordinance nor impose an occupation tax for the purpose of revenue, and that the defendant city should have been enjoined and restrained from collecting the same, and that the amount and proportion of the tax imposed cannot in this case affect the result.

The judgment is reversed and the cause is remanded with directions to render judgment for the plaintiff.